IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| CHERRON MARIE PHILLIPS, | ) |
|---|---|
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 17-cv-1338-MJR |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Respondent. | ) |

### MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### I. Introduction

This matter is now before the Court on Petitioner Cherron Phillips' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).[1] The entire Petition is characteristic of Phillips' conduct throughout her criminal trial—her conduct and rhetoric are consistent with a sovereign citizen attempting to evade the reach of the law. Petitioner filed an Amended Petition without leave of Court, and the Court gave her a final chance to file any additional amendments prior to directing the Government to respond (Dkt. txt. 6). Petitioner filed a second amendment (Doc. 8), and sought further time to file amendments, which the Court denied (Dkt. txt. 11). The

---

[1] This is Petitioner Phillips' first habeas corpus petition. The undersigned has the privilege of hearing this Petition pursuant to the Designation by Chief Judge Dianne Wood of the Seventh Circuit Court of Appeals (Doc. 3). The undersigned also handled Petitioner's underlying criminal case by designation (Doc. 117).

Government opposes the Petition (Doc. 1) and Amendments (Docs. 5, 8) arguing that they are time-barred, the arguments presented are procedurally defaulted, and even setting aside those hurdles, the Petition and Amendments fail on the merits (Docs. 12). Following the Government's response, Petitioner filed two additional motions (Docs. 14, 15). The matter is now before the Court for a decision. For the reasons set forth herein, the Court finds that Petitioner Phillips is not entitled to the relief she seeks, nor does this case warrant an evidentiary hearing.

## II. Facts

a. Criminal matter[2]

Following a jury trial, Petitioner was found guilty of ten counts of retaliating against a federal judge or law enforcement officer by lodging false or fraudulent liens against multiple individuals or entities in violation of 18 U.S.C. § 1521 and 1522 (Doc. 1; Doc. 166). Petitioner was found not guilty of two counts—six and nine—which also alleged retaliation against a federal judge or law enforcement officer (Doc. 1; Doc. 166). A number of motions filed during and after the Petitioner's trial are relevant to the issues presented in her habeas petition, so those documents will be referenced briefly here.

Petitioner's resistance to the prosecution of her criminal matter began at her initial appearance where she refused to enter a plea (Doc. 6). The district court entered

---

[2] Citations in this subsection of the Order are to documents in Petitioner's underlying criminal case—12-cr-0872.

a plea of not guilty on her behalf (*Id.*). After allowing time for Petitioner to find her own counsel, and after her refusal to accept appointed counsel, the court indicated that if the Petitioner wished to proceed *pro se* she must file her own documents, such as pretrial motions (Doc. 23). The Government moved for consideration of Petitioner's fitness to represent herself (Doc. 37). Ultimately, the Court directed that standby counsel be appointed (Dkt. txt. 43).

Subsequent to the appointment of standby counsel, Petitioner filed her own Motion to Dismiss the Indictment (Doc. 45), a Motion for hearing on default (Doc. 46), a Memorandum of Law (Doc. 48), and an Affidavit in Support (Doc. 49). After hearing the Motions in open court, the court denied them (Dkt. txt. 51). Petitioner immediately moved again to dismiss the indictment (Doc. 53), supporting her motion with a memorandum (Doc. 54). Both motions to dismiss the indictment were difficult to follow, but, in essence, it seems that Petitioner argued that she either had not agreed to participate in her case or there was no basis for the Government to maintain a case against her (Docs. 45, 53).

In a last ditch effort to interrupt her criminal case, Petitioner filed yet another Motion to object to further prosecution (Doc. 65) wherein she challenged the power of Congress to take certain actions, and attacked the validity of various statutes. The Court again denied the motion in open court (Dkt. txt. 67). Subsequent motions to dismiss were also denied (*See* Docs. 89, 91, 110, 113).

Following a hearing on Petitioner's competency to represent herself, counsel was formally appointed for the remainder of the proceedings (Docs. 114-15).

Perhaps attempting to circumvent the instantaneous denial of duplicative motions, Petitioner attempted to challenge the jurisdiction of the court handling her criminal case via documents styled as "notices" rather than "motions" (Docs. 122, 123). The notices, seeking to halt the prosecution for want of jurisdiction, were denied (Doc. 125). Petitioner then attempted to ensnare her criminal matter by filing an interlocutory appeal seeking review of the Court's latest denial of her jurisdictional ploys (Doc. 131). The Court deemed the appeal frivolous and maintained the then-approaching trial date in the criminal matter (Doc. 139). The Seventh Circuit Court of Appeals also denied Petitioner's request to stay her criminal matter pending her interlocutory appeal (Doc. 149).

On June 16, 2014, jury trial finally commenced in Petitioner's criminal case (Dkt. txt. 157). She was represented by counsel and did little if nothing to aid in her defense. As was mentioned above, following a three day trial, Defendant was found guilty of ten counts (Doc. 166). Petitioner orally moved for judgment of acquittal, and subsequently moved in writing for acquittal (Doc. 187) and for a new trial (Doc. 188). Both motions took issue with evidentiary rulings not raised in the present Petition. The case proceeded through the pre-sentence investigation process and Petitioner was ultimately sentenced to a total term of 84-months imprisonment (Doc. 212).

Petitioner filed a timely appeal (Doc. 214). On June 30, 2015, the Court granted Petitioner's Motion to Voluntarily Dismiss the Appeal (Doc. 247).

*b. Section 2255 Petition*

Petitioner filed her § 2255 habeas petition on February 13, 2017, more than a year after the date upon which her conviction became final—June 30, 2015. First, Petitioner contends that the Government failed to offer sufficient evidence of her actual knowledge to warrant a conviction (Doc. 1 at 4). Second, she argues that the indictment was flawed because it charged her with an offense, the constitutionality of which no court had yet established (*Id.* at 4-5). Third, she argues numerous times that her motion to dismiss was never ruled on (*Id.* at 5). Fourth, Petitioner alleges that the trial court erred by making light of her interlocutory appeal (*Id.* at 5-6). And, fifth, she argues at length that the statute of conviction—18 U.S.C. § 1521—is unconstitutional.

In the Amended Petition, she reiterates her primary argument that her statute of conviction is unconstitutional (*See* Doc. 5). Additionally, she raises a sixth contention that the indictment was too barebones to provide her legitimate notice of the charges against her (*Id.* at 4). Seventh, she makes remarks about the power of Congress to make laws (*Id.* at 5). In the same vein, she argues that the federal government has no control over the type of liens at issue in her case, and that the liens should be subject solely to state jurisdiction (*Id.* at 6). Eighth, she contends that her statute of conviction was not a valid law because it was not published in the federal register (*Id.* at 7). Finally, ninth,

Petitioner alleges that prior to any criminal matter being initiated, she should have had the right to a hearing on the liens she filed (*Id.* at 8-9).

Upon receiving the Amended Petition, this Court noted that, though habeas petitioners do not have unlimited leave to amend their pleadings, the Court would consider Petitioner's Amendment (Doc. 5), and would allow one additional opportunity for her to submit any desired amendments. Petitioner submitted an additional document within the time the Court allotted for such action (Doc. 8). The additional pleading is largely duplicative (*Id.*). Of note, Petitioner added an argument that the trial Court lacked jurisdiction because she was a citizen of the same state as some of the individuals she was alleged to have filed false liens against, thus diversity jurisdiction did not exist (*Id.* at 4).[3]

Though Petitioner attempted to submit subsequent documents and pleadings, the Court rebuffed those efforts, reminding Petitioner that extraneous and vexatious filings would not be tolerated (Dkt. txt. 11). Despite the Court's cautionary note, Petitioner filed two additional documents—a Motion for Court Orders (Doc. 14), seeking a ruling on an earlier motion that had been denied, and, a Motion for Claim for Credit (Doc. 15).

---

[3] Rules of diversity jurisdiction are not applicable here because this Court does not rely on diversity jurisdiction to consider this Petition. What is more, the party Petitioner identifies as destroying diversity—one of the victims of her false liens—is not a formal party to this matter and was not a party to the criminal matter, so that individual's citizenship is not relevant.

The United States filed a response to the Petition and Amendments seeking denial of the Petition on multiple grounds (Doc. 12). First, they argued that the Petition was time-barred because it was filed more than a year after the conviction and sentence became final (*Id.* at 6-7). Additionally, Petitioner has failed to establish cause and prejudice as to why she should be excused from the 1-year-bar and she has procedurally defaulted her claims by dismissing her appeal, so her Petition should be denied. In the alternative, the Government argues that her Petition should be denied on the merits because the statute of conviction is not unconstitutionally vague and the indictment sufficiently identified offensive conduct to provide notice of the charges against her (*Id.* at 8-16). Thus, the Government contends, denial is appropriate without an evidentiary hearing (*Id.* at 16).

The matter is now ripe for consideration by the Court.

**III.    Applicable Law**

Typically, a Section 2255 petition must be lodged within one year of the petitioner's conviction and sentence becoming final. **28 U.S.C. § 2255(f)(1).** If a petitioner files an appeal and voluntarily dismisses it, the one year clock begins to run 90 days after the dismissal (because 90 days is the time within which the petitioner could theoretically seek certiorari). ***Latham v. U.S.*, 527 F.3d 651, 652 (7th Cir. 2008).** However, there are a number of exceptions, such as, Section 2255(f)(3) allowing for an extended one year period to file from "the date on which the right asserted was initially

recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Additionally, there are two primary tolling doctrines that may apply to habeas petitions—equitable estoppel and equitable tolling—exceptions that come in to play if someone prevented a petitioner from timely filing, or if despite a petitioner's diligence filing was untimely. *See Clarke v. United States*, **703 F.3d 1098, 1101 (7th Cir. 2013).**

In addition to the one year limitations period for filing a petition, there is also a procedural requirement that in order to bring a constitutional claim on collateral appeal, the petitioner must also have raised that claim on direct appeal. *See Massaro v. United States,* **538 U.S. 500, 504 (2003).** This requirement may be excused if the petitioner can demonstrate good cause for the failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims; or that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *See e.g. Bousley v. United States*, **523 U.S. 614, 622 (1998);** *Fountain v. United States*, **211 F.3d 429, 433 (7th Cir. 2000).**

The power of Congress to make laws stems in part from the Commerce Clause, which provides for regulation of three primary categories—regulation of channels of interstate commerce, regulation of the instrumentalities of interstate commerce and persons or things in interstate commerce, and regulation of activities that substantially affect interstate commerce. *Gonzales v. Raich*, **545 U.S. 1, 15-17 (2005).** "When a

general regulatory statute bears a substantial relation to commerce, the *de minimus* character of individual instances arising under that statute is of no consequence**." *Id.* at 17 (internal citation omitted).** "Elements in federal criminal statutes requiring a connection to interstate or foreign commerce or to relationships with federal agencies, officers, or territory ordinarily provide the basis for the power of Congress to legislate on the subject. *United States v. Sawyer*, 733 F.3d 228, 229, n.1 (7th Cir. 2013).**

The Federal Register Act, 44 U.S.C. § 1501 et seq., requires publication of certain executive "documents" in the Federal Register, § 1505, but it specifically excludes acts of Congress from the definition of document, § 1501. Even if there were a violation of the Federal Register Act or any other publication requirement, however, that would not render the laws invalid, because the Constitution provides that a law is effective when, after passed by both houses of Congress, it is either signed by the President or not returned to Congress within ten days of presentment to the President. ART. I § 7.

The Seventh Circuit applies three primary requirements to determine the sufficiency of an indictment: (1) that it states the elements of the offense charged; (2) that it fairly informs the defendant of the nature of the charge so that she may prepare a defense; and (3) that it enables her to plead an acquittal or conviction as a bar against future prosecutions for the same offense. *See United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002).** The sufficiency of an indictment is determined on a practical basis, assessing the contents in its entirety as opposed to in a hyper technical matter**. *Id.*

"Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996) (internal citation omitted).

Turning to the substantive law applicable to this case, 18 U.S.C. § 1521 proscribes the filing of a false lien or encumbrance against the real or personal property of certain individuals as retaliation for their performance of official duties. Section 1521 specifically proscribes such conduct whether it is done knowingly or whether the actor should have reason to know that the conduct is false. The Seventh Circuit has not had occasion to consider the meaning of this statute, though other appellate courts have. Interpreting the meaning of "real or personal property" in Section 1521, the Ninth Circuit said:

> 'Since 2004, there [was] a nationwide increase in the number of filings by prison inmates of unsubstantiated liens and [UCC} financing statements against state or federal officials involved with their incarceration.' Section 1521 was enacted in response to the increasing vulnerability of federal employees as part of the Court Security Improvement Act of 2007. It intends to penalize individuals who seek to intimidate and harass federal employees and officers by filing, attempting to file or conspiring to file false liens or encumbrances.

*United States v. Neal*, 776 F.3d 645, 654 (9th Cir. 2015) (internal citations omitted). Based on the historical purpose of the statute and the contextual use of the terms "real and personal property" the Ninth Circuit concluded that the statute was meant to have

"broad and expansive application" designed to prevent "the harm such documents may cause, rather than focusing on the actual documents." *Id.* at 653.

The Eighth Circuit interpreted the broad reach of Section 1521 similarly, in what the court characterized as the first appeal of a conviction under that Section. **United States v. Reed, 668 F.3d 978, 981 (8th Cir. 2012).** Most recently, The Fifth Circuit agreed with the interpretation set forth in *Neal*. **United States v. Jordan, 851 F.3d 393, 398 (5th Cir. 2017), pet. for cert. pending No. 16-9463 (June 6, 2017).** The challenges presented in *Neal, Reed,* and *Jordan* dealt with the language defining "real or personal property" and the sufficiency of the evidence in the respective cases.

In **United States v. Feola, 420 U.S. 671 (1975)**, the Supreme Court examined the scinter or *mens rea* element of 18 U.S.C. § 111—a statute criminalizing the assault of federal officers, and a counterpart criminalizing conspiracy to do the same (18 U.S.C. § 371). Though the case is not directly analogous, the rationale is strikingly applicable to the arguments before the Court. In *Feola*, the defendants (on direct appeal) challenged the use of a general scinter requirement as opposed to a specific intent requirement in a statute criminalizing assault on a federal official. In examining the history and construction of the statute, the Court concluded that either reading of scinter could be correct (as requiring general or specific intent), but that the use of a general intent scinter would more closely mirror Congressional intent for the legislation. **Id. at 676-685.** Notably, the Court stressed the upmost importance of protecting federal officers in

the course of their duties. *Id.* Protection was particularly important because the duties undertaken by the officers may not always be agreeable in all parts of the nation. *Id.* The gist of § 1521 is much the same in that it seeks to protect federal officials from the undue harassment caused by the filing of false liens or encumbrances upon their property. Whether such a filing ultimately is fruitful is of little to no relevance. The general intention of lodging such a false claim is the act that is punishable, regardless of whether or not harm comes from that action.

**IV.     Legal Analysis**

Here, Petitioner's claims are strictly foreclosed by the one-year statute of limitations. The underlying judgment became final on June 30, 2015, and the time to file for certiorari ran on September 28, 2015. The denial of the petition based upon the time-bar would not equate to a miscarriage of justice, but for the sake of thoroughness, the Court will also consider Petitioner's claims on the merits. Before proceeding to the merits, the Court also notes that the Petition could be denied on procedural grounds because Petitioner voluntarily dismissed her direct appeal. *See* CM/ECF NDIL Case No. 12-cr-0872, Doc. 247 (mandate from 7th Circuit of voluntary dismissal); CM/ECF 7th Cir. Case No. 14-3387, Docs. 24-27 (Petitioner's pro se motion for voluntary dismissal, counsel's motion for dismissal, and court orders granting dismissal).

The Court now turns briefly to the merits of Petitioner's contentions so that any doubt may be put to rest once and for all. First, as to Petitioner's contention that the

Government offered insufficient evidence of her actual knowledge to warrant a conviction—the Court addressed this issue thoroughly in the lead-up to the criminal trial, and there is no change in the law that unsettles the decision already made on this front.  Petitioner puts forth no legal authority supporting her contention that Section 1521 is a specific intent statute.  Though there is not controlling, or even guiding precedent specifically addressing the *mens rea* component of Section 1521, this Court notes that the *Feola* case offers a reasonable analogy.

The *Feola* Court attributed much significance to the legislative intent of a statute criminalizing assault on a federal officer, concluding that a general *mens rea* requirement better served the objective of protecting federal officers from harm.  **Feola, 420 U.S. at 678-79, 684** ("We conclude, from all this, that in order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, s 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer.  All the statute requires is an intent to assault, not an intent to assault a federal officer.  A contrary conclusion would give insufficient protection to the agent enforcing an unpopular law, and none to the agent acting under cover.").  Here, the appellate courts that have considered Section 1521 have explicitly discussed the legislative intent—noting that the legislation came about to "prohibit all persons from using false financial filings to harm and intimidate federal employees.  The foreseeable

circumstances, determining who may cause the harm and how the harm results, are numerous and varied and seem of limited (if any) importance in the statute." *Neal*, **776 F.3d at 653.** Combining the *Feola* rationale with the existing interpretations of Section 1521, this Court finds that Section 1521 does not require a finding of specific intent, and thus, the evidence was sufficient to sustain the convictions rendered in Petitioner's underlying criminal case.

Second, Petitioner argued that the indictment was flawed because it charged her with an offense, the constitutionality of which had not yet been considered by any Court. This argument is a non-starter because the legislative process does not require a judicial stamp of approval *before* a criminal statute has force. Instead, a defendant has the opportunity to challenge the constitutionality of a charging statute anew during the duration of his or her criminal proceedings. In any event, the indictment itself is not flawed simply for charging an offense that has yet to be examined by the courts.

Third, Petitioner makes numerous arguments throughout her Petition that her motions to dismiss filed before the trial court were never ruled on. These arguments are blatantly false. The criminal docket sheet reflects that all motions, and even those styled as "notices," were ruled on prior to trial beginning.

Fourth, Petitioner argues that the trial court erred by making light of her interlocutory appeal—seeking to upset the trial court's jurisdiction. Petitioner's own disagreement with the Court's 'attitude' towards her interlocutory appeal is of no

significance because she cannot point to legal or factual error in the handling of the motion.  She was denied no procedural right because the appellate court ruled consistent with the trial court, that her appeal lacked merit.

Fifth, and most significantly, Petitioner contends that Section 1521 is unconstitutional.  Her allegations of unconstitutionality are a conglomerate of all the things about her case she attempts to challenge such as, the jurisdiction of federal courts, the choice of law to be applied to lien cases, the scope of conduct penalized by the statute, etc.  The challenges lack merit.  The statute clearly penalizes the false filing of liens or encumbrances against the property of federal officials.  Petitioner attempts to make much of this notion that there should be a hearing on the validity of a lien before any conduct is punished, but this contention overlooks the basic fact that it is criminal to file a lien or encumbrance that the filer blatantly knows to be false.  Petitioner makes no genuine assertion that she believed her filings were legitimate and that she had a valid claim to the property against which she filed claims.  Her filings exhibit characteristics of being completely baseless.

Sixth, Petitioner contends that the indictment was too barebones to inform her of the nature of the charges against her.  Her contention is belied by binding precedent which says that an indictment can be sufficient even if it uses the text of the statute itself.  *See Bates*, **96 F.3d at 970.**  The indictment in Petitioner's criminal matter identified the position titles of the individuals she allegedly filed liens against, as well

as the alleged dates the liens were filed. The indictment also identified the statute. This information was sufficient under controlling precedent.

Seventh, Petitioner contends that Congress lacked the power to regulate liens because the filing of liens and the like falls within the specter of state jurisdiction. Although Petitioner may have a point that some things are better left to the states for regulation, here, she filed liens against federal officials and the statute of conviction is specifically targeted at protecting federal officials, thus, it is appropriate that a federal court exercise jurisdiction over the matter. *See Sawyer*, **733 F.3d at 229, n.1 (noting that if an element of a statute involves federal officials, that is typically sufficient to ensure Congressional authority over the matter).**

Petitioner's eighth contention is easily disposed of because Congress is not required to publish criminal statutes in the federal register. In fact, the federal register is a repository for documents from the executive branch, and it explicitly denounces the notion that Congress must publish statutes in the medium. **44 U.S.C. § 1501; 1505.**

Finally, Petitioner's ninth contention, that she was entitled to a hearing on the liens before being criminally prosecuted, lacks merit. Though the ordinary course of establishing a lien may include a hearing on its validity, such a hearing is set by the wayside when the filer's conduct suggests criminal activity designed to antagonize federal officials. For the entire duration of Petitioner's criminal proceedings, and in the Petition before this Court, Petitioner has never contended that she had a legitimate basis

for filing the liens she did against federal officials. Nothing would have been accomplished by holding a hearing about the liens she filed, because, as the jury determined, the liens were false.

Having reviewed all of Petitioner's contentions, the Court finds that her Petition lacks merit on all accounts. Accordingly, the Petition is hereby **DENIED**.

## V. Pending motions

Petitioner's pending motions for orders and for credit (Docs. 14, 15) are **DENIED** as moot in light of the denial of her substantive claims.

## VI. Certificate of Appealability

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether Petitioner's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A certificate of appealability is required before a petitioner may appeal a district court's denial of his habeas corpus petition. A petitioner is entitled to a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented

were adequate to deserve encouragement to proceed further." *Miller-el v. Cockrell*, **537 U.S. 322, 336 (2003) (quoting** *Slack v. McDaniel,* **529 U.S. 473, 484 (2000)).**

Here, the undersigned finds no basis for a determination that the Court's instant decision to dismiss Petitioner's claims is debatable or incorrect. For the reasons stated above, Petitioner asserted at least nine meritless claims that reasonable jurists would conclude provide no basis for relief. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## VII. Conclusion

Based on the foregoing analysis, Petitioner Phillips' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED** and her case is **DISMISSED with prejudice**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly. Further, no certificate of appealability shall issue.

**IT IS SO ORDERED.**

DATED: August 17, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge